## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| HANNAH ELIZABETH OWENS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. CIV-23-669-PRW |
| | ) | |
| MARTIN O'MALLEY, | ) | |
| Commissioner of the Social Security | ) | |
| Administration, | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER

This 42 U.S.C. § 405(g) action for judicial review of the final decision of the Commissioner of the Social Security Administration ("SSA") is before the Court on U.S. Magistrate Judge Suzanne Mitchell's Report & Recommendation (Dkt. 14), entered on January 26, 2024. Plaintiff Hannah Elizabeth Owens's application for disability benefits and supplemental security income was denied initially and upon reconsideration by the SSA. Ms. Owens requested a hearing before an Administrative Law Judge ("ALJ"), who also denied her application. The SSA Appeals Council then denied Ms. Owens's request for review of the ALJ's decision.

In her complaint and brief before this Court, Ms. Owens alleges that the ALJ erroneously failed to take account of her proven mental impairments in determining her residual functional capacity ("RFC") to work. Upon review of these arguments and the record, Magistrate Judge Mitchell concluded that the ALJ had applied the correct legal

1

standard, and that his findings were supported by substantial evidence.[1] Ms. Owens timely objected to Judge Mitchell's Report & Recommendation (Dkt. 15).

### Legal Standard

Judicial review of the SSA Commissioner's decision is "limited to determining whether the Commissioner applied the correct legal standards and whether the agency's factual findings are supported by substantial evidence."[2] Substantial evidence is "more than a scintilla, but less than a preponderance."[3] The reviewing court's role is not to "reweigh the evidence or substitute our judgment for the Commissioner's," but to determine "whether the ALJ followed the specific rules of law that must be followed in weighing particular types of evidence in disability cases."[4]

### Analysis

Ms. Owens's appeal alleges two errors on the part of the ALJ. Specifically, Ms. Owens asserts that the ALJ's hypothetical question to the vocational witness and RFC determinations failed to account for two proven mental impairments: (1) a moderate limitation in Ms. Owens's ability to adapt and manage herself; and (2) a moderate limitation in Ms. Owens's ability to accept criticism from supervisors or respond appropriately to supervisors. In her Report and Recommendation (Dkt. 14), Judge Mitchell

---

[1] *See Noreja v. Comm'r, SSA*, 952 F.3d 1172, 1177–78 (10th Cir. 2020).

[2] *Knight ex rel. P.K. v. Colvin*, 756 F.3d 1171, 1175 (10th Cir. 2014). When the Appeals Council denies a claimant's request for review, the ALJ's decision becomes the final decision of the agency. 20 C.F.R. § 404.981.

[3] *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007).

[4] *Id.* (quoting *Hackett v. Barnhart*, 395 F.3d 1168, 1172 (10th Cir. 2005)).

concluded that the ALJ properly considered Ms. Owens's limitations and incorporated them into his hypothetical question and RFC determinations. Ms. Owens's objections to the report are confined to the adaptability limitation.[5]

The rules an ALJ must follow in evaluating medical evidence are well-established. *Haga v. Astrue*[6] establishes that an ALJ must consider all limitations supported by the record and may not "pick and choose through an uncontradicted medical opinion, taking only the parts that are favorable to a finding of nondisability."[7] However, that consideration need not take the form of a 1:1 correspondence between medical evidence of limitations and RFC findings.[8] As discussed in *Smith v. Colvin*,[9] an ALJ need not simply "repeat the moderate limitations assessed" by the medical evidence, but may incorporate the limitations into restrictions on the claimant's work-related activities.[10]

Here, the medical evidence before the ALJ consistently found that Ms. Owens was mildly limited in her ability to adapt or manage herself.[11] In his decision, the ALJ considered this evidence, along with treatment records and Ms. Owens's testimony, and found that her limitation in this functional area was moderate.[12] In light of that moderate

---

[5] Ms. Owens's Objections (Dkt. 15) assert two separate errors, but both address the adaptability issue.

[6] 482 F.3d 1205 (10th Cir. 2007).

[7] *Id.* at 1208.

[8] *Chapo v. Astrue*, 682 F.3d 1285, 1288 (10th Cir. 2012).

[9] 821 F.3d 1264 (10th Cir. 2016).

[10] *Id.* at 1269.

[11] Administrative Record ("AR") (Dkt. 5), at 72, 89, 111, 129.

[12] AR (Dkt. 5), at 22.

limitation, the ALJ "limited the claimant to work settings without fast pace or high production quotas and precluded her from public-facing positions."[13] Those restrictions were then reflected in the ALJ's RFC determination[14] and the hypothetical question posed to the vocational witness.[15]

Magistrate Judge Mitchell concluded that the ALJ's approach was consistent with *Smith*, in that Ms. Owens's moderate adaptability limitation was accounted for by incorporation into restrictions on the kinds of work she could perform. Ms. Owens's objections proceed along two lines.

First, Ms. Owens objects that the work-related restrictions did not adequately capture the adaptability limitation. She notes that the medical evaluations concluded that "[claimant] is able to adapt to a work setting and some changes in work settings,"[16] but nowhere explained what "some changes" means. She argues that the ALJ "left this requirement out of his hypothetical question and RFC, thus failing to capture the nuanced RFCs of the agency reviewers."[17]

---

[13] AR (Dkt. 5), at 22.

[14] AR (Dkt. 5), at 23 ("After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following non-exertional limitations: The claimant can understand, remember, and carry out simple, routine, and repetitive tasks in job settings that do not require high production rate, such as assembly line work, or work that requires high hourly quotas. She can have occasional interaction with co-workers or supervisors, but cannot have any contact with the public.").

[15] AR (Dkt. 5), at 56–57.

[16] AR (Dkt. 5), at 77, 94, 117, 135.

[17] Pl.'s Objs. (Dkt. 15), at 2.

4

The Court finds this objection to be merely semantic.[18] In considering the limitation, the ALJ found evidence that Ms. Owens "navigates the community independently, demonstrating an ability to adapt to changes and difficult, unpredictable situations."[19] That evidence, together with the medical evidence, fed directly into the ALJ's determination that certain work settings were not a good fit for Ms. Owens, and should be excluded. The record shows that the ALJ considered all available evidence for the adaptability limitation and incorporated his findings into the RFC and hypothetical questions via restrictions on work-related activities. That his language did not precisely mirror the language of the medical evaluations does not change the substance of his analysis and decision.

Second, Ms. Owens argues that there is "clear[] tension between the decisions in *Smith* and *Haga*."[20] The supposed tension arises out of the use of the Mental Residual Functional Capacity Assessment ("MRFCA"), a commonly used evaluation form. The MRFCA is divided into sections; as relevant here, in Section I the evaluator checks boxes to note moderate limitations of the claimant, while in Section III the evaluator presents a narrative description of functions equivalent to an RFC.[21] *Smith* noted that Section I is simply a tool to aid the evaluator in forming his or her full narrative assessment, and therefore held that an ALJ's RFC must reflect the Section III assessment, not every

---

[18] *See Smith*, 821 F.3d at 1267; *Duran v. Berryhill*, No. 18-cv-349-KRS, 2019 WL 1568139, at *4 (D.N.M. Apr. 11, 2019).

[19] AR (Dkt. 5), at 22.

[20] Pl.'s Objs. (Dkt. 15), at 4.

[21] *See Milner v. Berryhill*, No. 16-1050 GJF, 2018 WL 461095, at *11–12 (D.N.M. Jan. 18, 2018).

limitation noted in Section I.[22] According to Ms. Owens, that holding violates *Haga*'s mandate that an ALJ must address all limitations supported by the record.

The Court finds no inconsistency here. *Smith* does not permit an ALJ to disregard proven limitations, it simply explains that on the MRFCA form, the proven limitations are those reflected in the narrative statement.[23] Ms. Owens points to a District of New Mexico case, *Milner v. Berryhill*,[24] for support. But that case stands for the proposition that an ALJ should discount an MRFCA assessment that has glaring inconsistencies between Sections I and III.[25] The record reveals no such inconsistencies within the MRFCA forms here. And as explained above, Ms. Owens's assertion that, contrary to the MRFCA conclusions, the ALJ "f[ound] no adaptability limitations in the workplace," is a gross mischaracterization.[26] Judge Mitchell correctly concluded that the MRFCA forms incorporated the adaptability limitation into their narrative sections, and the ALJ appropriately accounted for it by restricting work activities in accordance with *Smith*.

---

[22] *Smith*, 821 F.3d at 1268–69 & nn.1–2.

[23] *Id.* The MRFCA form itself makes no secret of this fact, stating in bold at the start of Section I: "The questions below help determine the individual's ability to perform sustained work activities. However, the actual mental residual functionality capacity assessment is recorded in the narrative discussion(s), which describes how the evidence supports each conclusion." *See, e.g.*, AR (Dkt. 5), at 74.

[24] No. 16-1050 GJF, 2018 WL 461095.

[25] *Id.* at *12, *14–16.

[26] Pl.'s Objs. (Dkt. 15), at 4.

*Conclusion*

Having reviewed the Report & Recommendation (Dkt. 14) *de novo*, the Court agrees with the conclusion therein that the ALJ's decision was supported by substantial evidence and applied the correct legal standards. For the reasons explained above, the Court finds no merit to Ms. Owens's objections. Accordingly, the Court **ADOPTS** Magistrate Judge Mitchell's Report & Recommendation (Dkt. 14) in its entirety and **AFFIRMS** the decision of the Commissioner. A judgment shall be issued following this Order.

**IT IS SO ORDERED** this 4th day of June 2024.

_____
PATRICK R. WYRICK
UNITED STATES DISTRICT JUDGE